UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WEHMEYER, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-164 PS |
| | ) | |
| ED BUSS, | ) | |
| | ) | |
| Respondent | ) | |

**OPINION AND ORDER**

*Pro se* Petitioner Christopher Wehmeyer, an inmate at the Westville Correctional Facility in Westville, Indiana, was charged with giving or receiving anything of value in violation of prison rules. After exhausting his administrative remedies, Wehmeyer petitioned for relief under 28 U.S.C. § 2254. The Response filed on behalf of Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the administrative record including documents designated A through K, which set out the underlying procedures in this conduct adjustment board (CAB) proceeding. Petitioner filed a traverse.

**I. FACTUAL BACKGROUND**

On October 14, 2004, Wehmeyer filed a request for protective custody. (Ex. C.) According to the request, Wehmeyer feared a group of inmates who were threatening him. (*Id.*) In his request, Wehmeyer admitted that he owed money and had "a stolen radio and mac 5's." (*Id.*) Case Manager Fritch received the request for protection from Wehmeyer and promptly charged him with giving or receiving anything of value based on his admission to possessing the

stolen radio.  (Ex. A.)  On October 21, 2004, Wehmeyer was notified of the charge against him. (Ex. D.)  At the screening, Wehmeyer pled not guilty, did not request witnesses, requested a lay advocate, and noted that he "recd copy of evidence."  (*Id.*)

After a postponement on October 22, 2004 due to time constraints, (Ex. F), the CAB hearing was held on November 3, 2004, (Ex. G).  At the hearing, Wehmeyer stated that he was prepared to proceed, that someone had stolen the radio and mac 5's, that he owed the money "on the 'outs,'" and that no radio or mac 5's were found in his cell during a shakedown.  (*Id.*)  Based on the conduct report, Wehmeyer's statement, and a copy of the request for protective custody, the CAB concluded that Wehmeyer owed money and was seeking protection because of that debt.  (*Id.*)  Therefore, the CAB found Wehmeyer guilty of the charge.  (*Id.*)  The sanction imposed was a 60 day earned credit time loss, two month loss of telephone privileges, the imposition of a suspended credit class demotion, and the imposition of another 60 day earned credit time loss that had previously been suspended.  (*Id.*)  The facility head and the final reviewing authority upheld the finding of guilt and the sanctions.  (Exs. H & J.)

## II.  STANDARD OF REVIEW

The loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).  As such, certain process is due to a prisoner before good time credit can be revoked.  That process includes: "(1) advance written notice of the charges against [him] at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in [his] defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."  *Henderson v. U.S.*

2

*Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994), citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974).  For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker." *Id.*

The decision must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  The "some evidence" standard has been repeatedly applied in this circuit.  *See Webb v. Anderson*, 224 F.3d 649, 650-51 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717, 719-20 (7th Cir. 1996).  "This is a lenient standard, requiring no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 652 (citations omitted).  Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* (citing *Hill*, 472 U.S. at 457).  "'[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Id.* (emphasis and alteration in original) (citing *Hill*, 472 U.S. at 455–56).

### III.  DISCUSSION

Wehmeyer claims that the State violated his constitutional rights in three ways: (1) the time frames pursuant to the Adult Disciplinary Procedures (ADP) were not followed; (2) he incurred the debt before he was incarcerated, therefore punishment is inappropriate; and (3) there was insufficient evidence to find him guilty.

*A.*   *Violations of the ADP*

Wehmeyer alleges that the hearing dates and postponement were outside of the time

frame allowed under the ADP. Wehmeyer's claim that the CAB failed to follow ADP policy is not a claim based on supposed violations of the U.S. Constitution or federal laws. Relief in this action is only available from violations of the federal Constitution or laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State law questions addressing purported violations of the Indiana Department of Correction policy do not state a claim for federal habeas relief and must be denied. *See Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997). Therefore, Wehmeyer's claim that the date of the hearing violated the ADP fails to state a claim. Accordingly, this claim is denied.

**B.     *Where the Debt Occurred***

Wehmeyer alleges in his Petition that he "did not incur debt while incarcerated within D.O.C. yet is being punished because the person he owed from the street is now incarcerated as well." (Pet. at 3.) Wehmeyer raised this issue in his appeal to the facility head and to the final reviewing authority. The final reviewing authority denied this claim explaining that even though the debt was incurred outside of prison, it does not justify breaking prison rules in order to pay it and should be paid within the rules of the prison. (Ex. J.)

When a prisoner is subjected to the loss of good time credit, due process requires: (1) advance written notice of the charges against him at least 24 hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67; *Henderson* 13 F.3d at 1077. For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker." *Id.* Wehmeyer had 24 hours

4

notice of the charge, had an opportunity to call witnesses and present evidence, received a written statement by the fact finder, and was heard before an impartial decision-maker. This claim does not allege that any of these rights were violated, and therefore must be denied.

C.      *Sufficiency of the Evidence*

Wehmeyer alleges there was insufficient evidence to find him guilty. He argues in his petition that the conduct report is dated prior to the date on his request for protective custody. (Pet. at 3.) The conduct report includes several dates. (Ex. A.) At the top of the form, in the box titled Date Assigned, "10-15-04" is written. (*Id.*) The date of the incident is listed as "10/14/04." (*Id.*) The date the report is written is listed as "10/14/04." (*Id.*) Within the report, Case Manager Fritch states he received the protective custody request form on October 15, 2004. (*Id.*) The request for protective custody was submitted by Wehmeyer on October 14, 2004. (Ex. C). Wehmeyer argues that the report couldn't have been written on October 14, 2004 if Case Manager Fritch didn't receive the request for protective custody until October 15, 2004. (Traverse at 3-4.)

As noted above, the amount of evidence needed in these types of cases is very modest. The conduct report alone is sufficient evidence. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). What is undisputed is that on October 14, 2004 Wehmeyer submitted a request for protective custody. Within that request he admitted to owing money and having stolen property. On October 15, 2004 the case was assigned for screening, and Wehmeyer was screened on October 21, 2004. The incident from which the charge arose occurred on October 14, 2004 when Wehmeyer wrote his request. Even if there is a mistake on the conduct report, Case Manager Fritch either wrote the report later in the day on October 14 or he wrote the report on

5

October 15.  Wehmeyer does not deny writing the request for protective custody on October 14, 2004.  In finding Wehmeyer guilty, the CAB clearly indicates that it relied upon the conduct report, Wehmeyer's statement, and his request for protective custody.  (Ex. G).  Regardless of any error in dates, the conduct report explains the incident.  (Ex. A).  Consequently, there was sufficient evidence to find him guilty, and Wehmeyer's claim that his finding of guilt was based on insufficient evidence is denied.

## IV.  CONCLUSION

For all the reasons stated, and because it is clear that none of Wehmeyer's constitutional rights have been violated, this petition for relief under 28 U.S.C. §2254 is **DENIED.**

**SO ORDERED.**

ENTERED: July 31, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
